UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 07/12/06

JOHN S. PEREIRA, Trustee of Trace International
Holdings, Inc., in his capacity as judgment creditor
in <u>Pereira v. Cogan, et al.</u>, 00 Civ. 619 (RWS),

                    Plaintiff,

    -v-

NATIONAL UNION FIRE INSURANCE
COMPANY OF PITTSBURGH, PA., GULF
INSURANCE COMPANY, and EXECUTIVE
RISK INDEMNITY INC.

                Defendants.

No. 04 Civ. 1134 (LTS)

---

## OPINION AND ORDER

APPEARANCES:

LEBOEUF, LAMB, GREENE & MACRAE, LLP
  By: John P. Campo, Esq.
125 West 55th Street
New York, NY 10019

*Attorneys for Plaintiff*

D'AMATO & LYNCH
  By: Ronald H. Alenstein
70 Pine Street
New York, NY 10270-0110

*Attorneys for Defendant National Union
Fire Insurance Company of Pittsburgh,
PA*

DRINKER, BIDDLE & REATH, LLP
  By: Kathleen A. Donohue, Esq.
30 Broad Street 30th Floor
New York, NY 10004-2953

*Attorneys for Defendant Gulf Insurance
Company*

KORNSTEIN, VEISZ, WEXLER &
POLLARD, LLP
  By: Marvin Wexler
757 3rd Avenue
New York, NY 10017

*Attorneys for Defendant Executive Risk
Indemnity Inc.*

LAURA TAYLOR SWAIN, United States District Judge

Plaintiff John S. Pereira (the "Trustee"), as Trustee of Trace International Holdings, Inc. ("Trace"), brings this action to collect insurance proceeds allegedly due to him by virtue of a judgment entered against Defendants' insureds by this Court in Pereira v. Cogan, 00 Civ. 619 (RWS) (the "Underlying Action"). Defendant insurance companies National Union Fire Insurance Co. of Pittsburgh ("NUFIC"), Gulf Insurance Co. ("Gulf"), Executive Risk Indemnity, Inc. ("Executive"), (collectively "Defendants") move, on a number of grounds, to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). Andrea Farace ("Farace") and Phillip Smith ("Smith") move to intervene in the action and for a preliminary injunction. The Court has jurisdiction of the instant action pursuant to 28 U.S.C. § 1334(b).

The Court has considered carefully the parties' oral and written arguments. For the following reasons, the Court grants in part and denies in part Gulf's and Executive's motion to dismiss, denies, in its entirety, NUFIC's motion to dismiss, and grants Farace's and Smith's motion for intervention but denies their application for a preliminary injunction.


## BACKGROUND

The following facts alleged in the Complaint are taken as true for the purposes of the instant motions to dismiss the complaint for failure to state a claim. On or about July 21, 1999, Trace filed a petition for reorganization under Chapter 11 of the Bankruptcy Code in the United states Bankruptcy Court for the Southern District of New York. (Compl. ¶ 10.) As part of the bankruptcy case, an Official Committee of Unsecured Creditors (the "Creditors Committee") was formed. On or about October 18, 1999, the Creditors Committee, with permission of the bankruptcy court, commenced the Underlying Action as an adversary proceeding on behalf of the Trace estate against current and former officers and directors of Trace. (Id. ¶¶ 11-12.) In the

adversary proceeding, the Creditors Committee alleged that the officers and directors had violated

their fiduciary duties to Trace and sought monetary relief for those violations. (Id. ¶ 13.)

Trace had purchased and maintained directors and officers ("D & O") liability

insurance from the Defendants and Reliance National Company ("Reliance").[1] (Id. ¶ 14.) The

Defendants and Reliance provided D & O coverage to indemnify the directors and officers from

liabilities and reasonable litigation expenses incurred in connection with the adversary proceeding

in the following manner: NUFIC provided the primary layer up to $10 million; Reliance provided

the first excess layer above $10 million and up to $20 million; Gulf provided the second excess

layer above $20 million and up to $30 million; Executive provided the third excess layer above $30

million and up to $40 million; Reliance provided a fourth and final excess layer above $40 million

and up to $50 million. (Id. ¶¶ 14-19.)

On the motion of certain Defendants, this Court (Sweet, J.) withdrew the reference of

the Underlying Action from the bankruptcy court. (Id. ¶¶ 20-21.) On or about January 24, 2000, the

bankruptcy case was converted from a Chapter 11 reorganization to a liquidation under Chapter 7 of

the Bankruptcy Code, and the Trustee was appointed as trustee for Trace's estate. (Id. ¶ 22.) The

Trustee, after being substituted for the Creditors Committee as the plaintiff in the Underlying

Action, amended the complaint and prosecuted the litigation through trial and judgment. (Id. ¶ 23.)

In connection with the Underlying Action, NUFIC advanced some or all of the legal fees for the

officers and directors. (Id. ¶ 24.) The Trustee is unaware of these amounts and whether they were

reasonable or appropriate under the NUFIC D & O insurance policy. (Id.)

On June 25, 2003, after trial, this Court (Sweet, J.) entered judgment in the

Underlying Action ("the Judgment") against the following directors and officers in the following

---

[1]     Reliance is not named as a Defendant in this action because it is currently in
liquidation. (Compl. ¶ 29.)

amounts:

| | |
|---|---|
| Marshall S. Cogan ("Cogan") | $44,374,824.16 |
| Andrea Farace ("Farace") | $27,308,841.12 |
| Frederick Marcus ("Marcus") | $37,360,290.70 |
| Robert H. Nelson ("Nelson") | $38,321,643.30 |
| Philip Smith ("Smith") | $21,392,974.45 |
| Karl Winters ("Winters") | $21,350,774.60[2] |

(Id. ¶ 25.) The Judgment is exclusive of pre-judgment interest from June 15, 2003, through June

25, 2003, and post-judgment interest. (Id. ¶ 26.) On July 8, 2003, the Trustee served notice of the

Judgment on Defendants and Reliance, pursuant to Section 3420(a)(2) of the New York Insurance

Law. (Id. ¶ 27.) The Judgment exceeded the limits of each Defendant's respective insurance

coverage.[3] (Id. ¶ 30.) At the time the Complaint was written, Defendants had not paid any portion

of the Judgment. (Id. ¶ 28.)

The Trustee alleges that he is entitled to recover the full extent of coverage under the

insurance policies. (Id. ¶ 31.) As part of his claim for relief, the Trustee also seeks proof by NUFIC

that its payment of defense costs to the Trace officers and directors in connection with the

Underlying Action was appropriate and reasonable. (Id. ¶ 24.)

---

[2] On June 30, 2005, the Judgment was vacated as against Frederick Marcus, Andrea Farace, and Philip Smith and the matter was remanded for a new trial as to those three defendants. See Pereira v. Farace, 413 F.3d 330 (2d Cir. 2005). In a letter dated July 20, 2005, Defendant Executive argues that, by virtue of this Second Circuit decision, the entire case is rendered moot. While the Second Circuit's decision moots the claims in this action for indemnity as to the now-vacated judgments against defendants Marcus, Farace and Smith, it does not affect the underlying judgment entered against the non-appealing and the settling defendants in the Underlying Action, and the case is not moot as to the Trustee's claims for payment of those elements of the Judgment.

[3] The Judgment exceeds Defendants' respective insurance coverage layers even after excluding the amounts assessed against Frederick Marcus, Andrea Farace, and Phillips Smith.

## DISCUSSION

In evaluating a motion to dismiss a complaint pursuant to Rule 12(b)(6), the Court must take as true the facts alleged in the plaintiff's complaint and draw all reasonable inferences in his favor. W. Mohegan Tribe & Nation v. Orange County, 395 F.3d 18, 20 (2d Cir. 2004); Hernandez v. Coughlin, 18 F.3d 133, 136 (2d Cir. 1994). The Court must not dismiss a complaint "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

On a motion to dismiss, the court may consider "any written instrument attached to the complaint as an exhibit or incorporated in the complaint by reference, as well as documents upon which the complaint relies and which are integral to the complaint." Subaru Distribs. Corp. v. Subaru of Am., Inc., 425 F.3d 119, 122 (2d Cir. 2005). This includes documents "that the plaintiff[] either possessed or knew about and upon which [it] relied in bringing the suit." Rothman v. Gregor, 220 F.3d 81, 88-89 (2d Cir. 2000). In his Complaint, the Trustee refers to the D & O liability insurance purchased from Defendants for the Trace officers and directors. (Compl. ¶ 14.) The Court finds that the relevant insurance policies of Defendants are integral to the Complaint and that Plaintiff knew about these policies and relied on them in bringing the instant action. The Court will therefore consider these policies in making its determination on the motions to dismiss. (See Lisa B. Lance Aff. in Supp. of Executive's Mot. to Dismiss, "Lance Aff.," Exs. A, "NUFIC Policy," C, "Gulf Policy," D, "Executive Policy.") The Court will also take judicial notice of the pleadings, orders, and judgments in prior litigation related to this instant case. See Patrowicz v. Transamerica Homefirst, Inc., 359 F. Supp. 2d 140, 144 (2d Cir. 2005).

Motions to Dismiss

Defendants Gulf and Executive make their motion to dismiss on five grounds, each of which they contend applies equally to both insurers. Gulf's brief addresses two of the grounds and Executive's brief addresses the other three. Defendant NUFIC makes its own motion on independent grounds. The Court will first address Gulf's and Executive's motion to dismiss and then address NUFIC's motion to dismiss.

*Gulf's/Executive's Motion to Dismiss*

(1) Nature of Judgment Against Trace Officers and Directors

Gulf argues that the complaint should be dismissed, contending that the damages awarded against the Trace officers and directors in the prior litigation are not recoverable as a matter of law under its insurance policy because the underlying claims and judgment were equitable in nature. Gulf cites the New York law[4] principle that, as a matter of public policy, "[o]ne may not insure against . . . the orders of a court sitting in equity." (See Gulf's Reply in support of Mot. to Dismiss at 4 (citing, e.g., Debruyne v. Clay, No. 94 Civ. 4704 (JSM), 1999 WL 782481 at *14 (S.D.N.Y. Oct. 1, 1999)). However, an examination of the relevant authorities (including those cited by Gulf) reveals that the cited principle does not preclude the claims asserted in this action. The "equitable" judgments as to which insurance coverage is precluded are ones involving the restitution of ill-gotten gains or the return of property wrongfully in the possession of the defendant. See Reliance Group Holdings, Inc. v. Nat. Union Fire Ins. Co., 594 N.Y.S.2d 20 (N.Y. App. Div.

---

[4]    New York substantive law applies as most of the parties have their principal place of business in New York and the prior litigation in this case involved events principally occurring in New York. See Wells Fargo Asia Ltd. v. Citibank, N.A., 936 F.2d 723, 726 (2d Cir. 1991) (finding that, under federal law, the substantive law of the jurisdiction having the greatest interest in the litigation will be applied). The parties also do not object to the application of New York law.

1993). <u>Reliance</u>, a decision upon which the <u>Debruyne</u> court relied, held that an insurance company could not insure "against the risk of being ordered to return money or property that has been wrongfully acquired." <u>Reliance Group Holdings Inc.</u>, 594 N.Y.S at 24. In that case, the corporation which had bought the D & O insurance was also in possession of the proceeds of illegal activity and had benefitted from that activity and therefore could not recover its indemnification costs under the policy. <u>Id.</u> at 25. <u>See also</u> <u>Level 3 Commc'ns, Inc. v. Fed. Ins. Co.</u>, 272 F.3d 908, 910 (7th Cir. 2001) (finding that an insurance company does not insure against the restoration of an ill-gotten gain).

Here, while Judge Sweet found that the fiduciary claims against the officers and directors and the subsequent monetary relief were equitable in nature, he noted that only Cogan personally possessed any of the disputed funds. <u>See</u> <u>Pereira v. Cogan</u>, 294 B.R. 449, 544-46 (S.D.N.Y. 2003), <u>vacated</u> and <u>remanded</u>, 413 F.3d 330 (2d Cir. 2005).[5] Because the Gulf and Executive policies do not specifically exclude "equitable" claims to any extent greater than would be the case under the general principles of New York law discussed above,[6] the insurers' motion on

---

[5]    Nelson personally received a small part of the monies upon which his liability under the Judgment is predicated, including loans from Trace in the amount of $600,000. <u>See</u> <u>Cogan</u>, 294 B.R. at 494.

[6]    Under New York law, "exclusionary clauses in insurance contracts are construed strictly to give the interpretation most beneficial to the insured. . . . An insurer claiming that a loss is excluded by a policy term has the burden of demonstrating that the term expressly excludes the loss-- exclusions are not extended by interpretation or implication." <u>In re Donald Sheldon & Co., Inc.</u>, 186 B.R. 364, 369 (S.D.N.Y. 1995). Gulf's insurance policy incorporates the terms and conditions of the primary policy issued by NUFIC subject to any additional terms in its own policy. (<u>See</u> Lance Aff. Ex. C, § I A-C.) The NUFIC Policy provides that it will "pay the Loss of each and every Director or Officer of the Company arising from a Claim first made against the Directors or Officers." (<u>Id.</u>, Ex. A, § 1.) The policy defines "Loss" broadly to include "damages, judgments, settlements. . . ." (<u>Id.</u>, Ex. A, § 2(g).) "Claim" is defined as "a written demand for monetary or non-monetary relief." (<u>Id.</u>, Ex. A, § 2(a).) Endorsement 7, which also deals with claims, defines "claim" as "a written demand for monetary

this ground is granted only to the extent the Trustee's claims seek coverage for the portions of the Judgment representing the return of monies wrongfully obtained by Cogan and Nelson.  This result is, moreover, consistent with the Second Circuit's determination in Pereira v. Farace, 413 F.3d 330, 339 (2d Cir. 2005), on the appeal of Judge Sweet's decision, which rejected the notion that Plaintiff's fiduciary claims against the appealing defendants were equitable in nature.

(2) Exclusionary Argument based on "Prior and Pending Litigation" Clause of Policy

Gulf argues that its policy excludes coverage of the Judgment against the Trace directors and officers because of a prior litigation exclusionary clause.

In making its argument, Gulf relies on Endorsement No. 1 to its policy, which reads in its entirety,

> In consideration of the payment of premium, it is hereby understood and agreed that the Insurer shall not be liable to make any payment for Loss in connection with any Claim made against any of the Insureds based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any Claim, demand, cause of action, legal or quasi-legal proceeding or administrative proceeding pending, or orders, decrees or judgments entered, against the Directors and Officers or the Insured Company on or prior to 07-06-1998, or any fact, circumstance or situation underlying or alleged therein.

(Lance Aff., Ex. C, Endorsement No. 1.)[7]

Under New York law, "an insurance contract is interpreted to give effect to the intent of the parties as expressed in the clear language of the contract." Vill. of Sylvan Beach v. Travelers

---

damages or equitable relief." (Id., Ex. A, Endorsement 7 at 2.)  Executive's Policy also incorporates the definitions and claims of the underlying insurance, which would include the NUFIC policy (See Lance Aff. Ex. D, Item 4, "Schedule of Underlying Insurance," and § IV.)

[7] Executive's policy has a similar prior litigation exclusionary provision. (See Lance Aff. Ex. D, Endorsement No. 3.)

Indem. Co., 55 F.3d 114, 115 (2d Cir. 1995). In this respect, "[w]hen a contract is not ambiguous, the court should assign the plain and ordinary meaning to each term and interpret the contract without the aid of extrinsic evidence." Zunenshine v. Executive Risk Indem., Inc., No. 97 Civ. 5525 (MBM), 1998 WL 483475, at *3 (S.D.N.Y. Aug. 17, 1998) (citations omitted). In the context of insurance agreements, "the insurer generally bears the burden of proving that the claim falls within the scope of an exclusion. . . . To negate coverage by virtue of an exclusion, an insurer must establish that the exclusion is stated in clear and unmistakable language, is subject to no other reasonable interpretation, and applies in the particular case." Vill. of Sylvan Beach, 55 F.3d at 115 (citations omitted). The "insurer may rely on the facts as alleged in the complaints to demonstrate that an exclusion applies." Zunenshine, 1998 WL 483475, at *4 (citations omitted). In determining whether a prior litigation clause excludes coverage, courts "have focused on whether there was a sufficient factual nexus between the two lawsuits." Id. (citations omitted). "The coverage does not depend upon the pleader's art but rather upon 'underlying' facts. Id.

Gulf argues that the Judgment for which the Trustee here seeks coverage is excluded from the scope of the insurance contracts by reason of the pendency of a civil complaint, captioned Anthony Barbuto v. Trace Int'l Holdings, Inc., No. 15175, ("Barbuto"), in the Court of Chancery, New Castle County, Delaware. (See Decl. of Blair Nespole in Supp. of Gulf's Mot. to Dismiss, "Nespole Decl.," Ex. G.), at the time the relevant insurance documents were issued.[8] A review of

---

[8]     The Court takes judicial notice of the Barbuto complaint as a fact "capable of accurate and ready determination by resort to sources whose accuracy cannot be reasonably questioned." Fed. R. Evid. 201(b)(2) (West 2005). See Bensalem Township v. Int'l Surplus Lines Ins. Co., No. 91 Civ. 5315, 1992 WL 142024, at *2 (E.D. Pa. June 15, 1992) (in context of prior litigation exclusion argument, court took judicial notice under Federal Rule of Evidence 201(b)(2) of state court complaint.), rev'd on other grounds, 38 F.3d 1303 (3d Cir. 1994). Furthermore, from his motion papers, it is clear that Plaintiff is aware of the this complaint and its content and does not appear to object to its consideration in the pending motion to dismiss. (See Pl's Mem. in Opp. to Mot. to Dismiss by Gulf and Executive,

the <u>Barbuto</u> complaint and comparison of it with the complaint and amended complaints in the Underlying Action reveals a substantial, but not perfect, overlap of specific factual claims of improper declaration and payment of dividends, excessive compensation, breach of fiduciary oversight duties and other matters. While it is clear that certain of the claims would be excluded under the plain language of the prior litigation provisions of the insurance contracts, it cannot, however, be said that there are no circumstances under which the Trustee would be able to prevail against a claim that all of the factual circumstances underlying the Judgment "ar[o]se[] out of, . . . in consequence of, or in any way involv[ed]" the factual circumstances underlying the claims asserted in <u>Barbuto</u>. Defendants' motion to dismiss the complaint is, accordingly denied insofar as it is premised on the prior litigation exclusion provisions of the insurance contracts.

(3) Representation Made in Application for Insurance Policies

      Executive argues that its and Gulf's policies are void as matter of law as to all Trace officers and directors because Cogan, who was then the Chief Executive Officer of Trace, signed a false representation concerning potential liability claims against these officers and directors in connection with the issuance of the policies. Under New York law, an insured's policy is void if the insured made misrepresentations to the company and this misrepresentation was material to the issuance of the policy. <u>See</u> <u>Chicago Ins. Co. v. Kreitzer & Vogelman</u>, 265 F. Supp. 2d 335, 342-43 (S.D.N.Y. 2003). "The failure to disclose is as much a misrepresentation as a false affirmative statement." <u>Id.</u> at 343. Moreover, "[e]ven if a misrepresentation was made innocently or without the intent to deceive, it is sufficient to void the policy if it is material." <u>Id.</u> (citing <u>Kulikowski v. Roslyn Sav. Bank</u>, 503 N.Y.S. 2d 863, 854 (N.Y. App. Div 1986)). A misrepresentation is material if the insurer can show "that the misrepresentation induced it to accept an application that it might

"Opp. to Gulf and Executive," at 20-22.)

otherwise have refused." Id. at 343. Further, a material misrepresentation can void the policies of

co-insured employees of a corporation whose president made the misrepresentation in the warranty.

See INA Underwriters Ins. Co. v. D.H. Forde & Co., P.C., 630 F. Supp. 76, 77 (W.D.N.Y. 1985).

Here, Cogan delivered representations, dated August 18, 1998, and August 7, 1998,

to Gulf and Executive respectively, in connection with applications for excess insurance coverage.

Both statements read, in pertinent part, "[t]his will confirm that we are not aware of any acts, errors

or omissions which could give rise to a claim as respects the [relevant] layer of our Directors and

Officers Liability program." (See Lance Aff., Exs. C, G.)  Relying on Judge Sweet's determinations

concerning longstanding breaches of fiduciary duty and excessive compensation dating back to

1993 as well as the pendency of the Barbuto action at the time, Executive contends that there can be

no dispute that Cogan's representations concerning the possibility of claims that could give rise to

liability under the policies were false when made.  (See Executive's Mot. to Dismiss at 9-15.)

However, at this early stage, there is a question of fact as to whether Cogan made a

misrepresentation.  Even under the policies' broad definition of "Claim" as any written demand for

relief,[9] the Court cannot conclude on the current record that Cogan was aware of the existence of

any acts that would give rise to claims that would reach the excess coverage in the Gulf and

Executive polices.[10]  The Barbuto complaint does not specify an amount of damages as part of its

_____

[9]    See supra note 6.

[10]    It is important to note here that the language of the represenations focuses on the
signatory's state of mind ("we are not aware of any facts") rather than on the
objective state of affairs (e.g. "There are no acts").  Compare with Chicago Ins.
Co., 265 F. Supp. 2d at 339 (policy simply asked whether any lawyer had been the
subject of reprimand or disciplinary action not whether signatory was aware of
such fact).

claim for relief.[11] So, even if the Court imputes knowledge of the <u>Barbuto</u> litigation to Cogan, it is possible that he may have believed that any judgment from that action could not have reached Gulf's or Executive's excess coverage. Further, any determination after the fact by Judge Sweet as to Cogan's breaches of fiduciary duty and excessive compensation is not dispositive of the question as to whether Cogan made a misrepresentation when he signed the statements in 1998.

Even if it were indisputable that Cogan made a misrepresentation, there would also be a question of fact as to whether this misrepresentation was material. Executive recognizes that materiality is generally an issue of fact but argues that this case is an instance "where the facts misrepresented are so serious that one would know them to be of substantial concern to the insurers, [such that] they may be found to be material as a matter of law." (Executive's Mot. to Dismiss at 9, <u>quoting</u> <u>Ris v. Nat'l Union Fire Ins. Co.</u>, No. 86 Civ. 9718 (RO), 1989 WL 76199, at *2 (S.D.N.Y. July 6, 1989).) However, on the current record, the Court cannot conclude as a matter of law that the companies would not have provided coverage upon disclosure of this misrepresentation. Plaintiff argues that the <u>Barbuto</u> litigation was already a matter of public record prior to the policies being issued and that Gulf, specifically, was sent documents which disclosed the pendency of this action. (<u>See</u> Oral Argument Tr. at 38; Pl.'s Opp'n. to Gulf's and Executive's Mot. to Dismiss at 11.) It may be, then, that the companies decided to provide coverage despite the existence of that action. This scenario lends support to the hypothesis that the companies, already aware of the possible liabilities, would have provided coverage even if Cogan had not signed the representations. The motion to dismiss is denied insofar as it is premised on the alleged misrepresentation in Cogan's written statements.

---

[11]     Plaintiff contends that the litigation involved damages in the amount of $1 million or $2 million dollars at most. (<u>See</u> Oral Argument Tr. at 44.)

(4) Personal Profit Exclusion

Executive argues that a personal profit exclusion in the NUFIC policy[12] excludes coverage of the money damages sought by Plaintiff. (Executive's Mot. to Dismiss at 19-21.) The language reads,

> The Insurer shall not be liable to make any payment for Loss in connection with a Claim made against an Insured: (a) arising out of, based upon or attributable to the gaining in fact of any profit or advantage to which an Insured was not legally entitled. . . .

(Lance Aff. Ex. A, § 4(a).)[13] Executive argues that the quoted language precludes coverage of the Judgment as against Cogan as well as the other officers and directors. Plaintiff concedes that the exclusion may limit coverage attributable to Cogan because he personally profited from his ill gotten gain. Plaintiff contends, however, that the language does not bar coverage of the damages assessed against the other directors and officers. (See Pl.'s Opp'n. to Gulf's and Executive's Mot. to Dismiss at 14-16.)

Executive argues that the plain meaning of the provision supports application of the exclusion to preclude coverage of all defendants because the language excludes any damages against "an" Insured (that is, any Trace director or officer) that arise out of or are attributable to "an" Insured's (that is, any Trace director's or officer's) ill-gotten gain. (See Executive's Mot. to Dismiss at 21.) In this instance, the bulk of the damages assessed against the non-Cogan defendants (the "Loss") did relate to the ill-gotten gain of an Insured, namely Cogan.[14] That said,

---

[12]  Both the Gulf and Executive policies incorporate the terms of the NUFIC policy. See supra note 6.

[13]  "Insured" includes any director or officer of Trace. (See Lance Aff. Ex. A, § 2(e)(1).)

[14]  It is important to note here, however, that Judge Sweet did not impute Cogan's wrongdoing to the other officers and directors, but found, rather, that those

when read in context with the other Section Four provisions, the Court cannot conclude as a matter of law that the language was intended to exclude coverage as to the non-Cogan defendants. Section 4(c) of the NUFIC policy provides that "The Wrongful Act of a Director or Officer shall not be imputed to any other Director or Officer for the purpose of determining the applicability of the foregoing exclusions 4(a) through 4( c)." (Lance Aff. Ex. A, § 4( c).) This appears to render the personal profit exclusion truly personal as to each officer. At the very least, it raises sufficient ambiguity to preclude a determination as a matter of law at this stage that there is no recovery to be derived from the coverage of those officers who did not profit personally. See In re Donald Sheldon & Co., 186 B.R. 364, 369 (Bankr. S.D.N.Y. 1995) (on summary judgment motion, exclusion related to personal gain provision not conclusive because language susceptible to multiple interpretations), aff'd, 182 F.3d 899 (2d Cir. 1999); Vill. of Sylvan Beach v. Travelers Indem. Co., 55 F.3d 114, 115 (2d Cir. 1995) ("[t]o negate coverage by virtue of an exclusion," the exclusion must be stated in "clear and unmistakable language").

(5) Exhaustion of Underlying Excess Layers of Coverage

Executive argues that it is not responsible for providing any coverage because the excess layers below have not and will not be exhausted. (Executive's Mot. to Dismiss at 22-24.) Executive points to language in its policy providing that it will supply coverage only after the underlying policies have been exhausted:

> The Company shall provide the **Insured** with insurance excess of the **Underlying Insurance** . . . only after all **Underlying Insurance** has been exhausted by actual payment of claims or losses thereunder.

individuals were liable for their own wrongdoing in allowing Cogan to take money and, in the process, damage Trace. See Pereira v. Cogan, 294 B.R. 449, 463 (S.D.N.Y. 2003).

(Lance Aff. Ex. D, § I (emphasis in original).)

> In the event of the depletion of the limits of liability of the **Underlying Insurance** solely as the result of actual payment of claims or losses thereunder by the applicable insurers, this policy shall . . . apply to claims or losses as excess insurance over the amount of insurance remaining under such **Underlying Insurance**.

(<u>Id.</u>, § IV (emphasis in original).)[15] Executive contends that the plain meaning of these provisions is that it does not have to provide any coverage unless and until the underlying insurance policies have been exhausted by actual payment. In this instance, the Complaint alleges that Reliance, the first layer of excess coverage, is in liquidation and therefore unable to pay. Executive argues that, consequently, neither Gulf nor Executive is under any obligation to pay and the Complaint should be dismissed as against them because Reliance's layer will never be exhausted by actual payment. (<u>See</u> Executive's Mot. to Dismiss at 22-23.)

Though Executive's interpretation of the relevant provisions may be reasonable, the Court cannot conclude that it is the only reasonable interpretation. <u>See</u> <u>In re Donald Sheldon & Co., Inc.</u>, 186 B.R. at 369. In this connection, the Court notes that the Second Circuit has rejected a similar argument that an insurance policy provision required actual exhaustion of previous layers of insurance as a condition precedent for payment of the excess coverage. <u>See</u> <u>Zeig v. Mass. Bonding & Ins. Co.</u>, 23 F.2d 665 (2d Cir. 1928). In that case, the pertinent language of the provision read that excess coverage "shall apply and cover only after all other insurance herein referred to shall have been exhausted in the payment of claims to the full amount of the expressed limits of such other insurance." <u>Id.</u> at 665. In <u>Zeig</u>, the claims against the policies providing coverage below the excess policy floor had been settled for less than the face amount of those policies, and the claim at issue was asserted against the excess insurer only to the extent of the level of liability that was within the scope of that policy. The court found that interpreting this language to require that the

---

[15]     Gulf's policy has a nearly identical provision. (<u>See</u> Lance Aff. Ex. C at 2.)

underlying insurance had to be exhausted by actual collection was "harmful to the insured and of no rational advantage to the insurer [and] ought only to be reached when the terms of the contract demand it." Id. at 666. The Second Circuit concluded that it could "see nothing in the clause before [it] to require a construction so burdensome to the insured, and must accordingly reject such an interpretation." Id. This Court finds that the same reasoning is relevant to this case. Interpreting the policy to excuse the excess insurers from providing coverage within their respective layers on account of the unrelated insolvency of an intermediary insurer would work a similar hardship on the insureds, who have already been deprived of a layer of coverage by the insolvency, and provide a windfall to the excess insurers. Thus, it cannot be said that the excess insurers' interpretation of the policy is the only reasonable one and the motion to dismiss on this ground is denied.

*NUFIC's Motion to Dismiss*

NUFIC moves to the dismiss the complaint on the grounds that its $10 million policy limit has already been exhausted by payment of attorney costs in connection with the Underlying Action. Under the terms of its policy, NUFIC's limit of liability is reduced by the amount incurred in legal fees. (See NUFIC Mot. to Dismiss at 8-9.) The policy provides that "[d]efense costs are part of Loss and as such are subject to the Limit of Liability for Loss." (See Lance Aff. Ex. A, § 5.) NUFIC submits an affidavit from Elizabeth Wacik, a coverage director for NUFIC, in which she states that the legal bills relating to the Underlying Action exceeded the $10 million policy limit and that, as a result of these payments, the policy has been exhausted. (See Elizabeth Wacik Aff. in Supp. of NUFIC's Mot. to Dismiss.) However, the question of exhaustion is a factual issue that cannot be resolved at this stage. In this connection, the Court notes that the Wacik affidavit is not properly before the Court on the instant motion to dismiss. Accordingly, the Court cannot conclude

on the current record that there is no set of facts upon which Plaintiff would prevail against a claim that the NUFIC coverage layer has been exhausted.

NUFIC also moves to dismiss the portion of the Complaint that seeks proof that its advance of defense costs to the Trace officers and directors in connection with the Underlying Action was appropriate and reasonable. NUFIC argues that the terms of its policy do not give Plaintiff standing to object to the reasonableness of the defense costs. (See NUFIC Mot. to Dismiss at 4-8.) The Court disagrees. The relevant provision of the policy provides that "'Defense Costs' means reasonable and necessary fees, costs and expenses consented to by the Insurer." (Lance Aff. Ex. A, § 2(d).) While this language may be read to indicate that the Insurer alone determines whether an expense is reasonable and necessary, and whether it will consent to the payment, this interpretation is not the only reasonable one. See In re Donald Sheldon & Co., 186 B.R. 364, 369 (Bankr. S.D.N.Y. 1995). One could also reasonably interpret this language to read that the Insurer must consent to the payment and that it must be objectively reasonable. The Court therefore cannot conclude as a matter of law at this stage that the Trustee does not have standing to question the reasonableness of the payments of defense costs. Accordingly, the Court denies NUFIC's motion to dismiss the portion of the Complaint that seeks proof that the defense costs were reasonable and appropriate.

## Motion for Intervention and Preliminary Injunction

### Motion for Intervention

Farace and Smith ("the Intervenors") move to intervene in the instant action by right or, in the alternative, for permission to intervene.

Rule 24(a) permits intervention as of right upon a timely application:

> (1) when a statute of the United States confers an unconditional right to intervene; or (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

Fed. R. Civ. P. 24(a) (West 2006). The Intervenors do not contend that they have any statutory right to intervene. Instead, they argue that they should be allowed to intervene pursuant to subsection (a)(2). To succeed on a motion under Rule 24(a)(2), an intervenor must "(1) timely file an application, (2) show an interest in the action, (3) demonstrate that the interest may be impaired by the disposition of the action, [and] (4) show that the interest is not protected adequately by the parties to the action." Brennan v. N.Y.C. Board of Education, 260 F.3d 123, 128 (2d Cir. 2001) (internal quotations and citation omitted). The Court finds that the Intervenors have met all of the requirements of Rule 24(a)(2).

The Intervenors have an interest in the property which is the subject of the action. A proposed intervenor must show that he has a "direct, substantial, and legally protectable" interest in the action. Washington Electric Cooperative, Inc. v. Massachusetts Mun. Wholesale Electric Co., 922 F.2d 92, 97 (2d Cir. 1990). Here, the Intervenors have a direct interest in property that is the subject of the instant action– namely, the insurance proceeds being sought by Plaintiff under Defendants' policies in connection with a judgment against the Trace officer and directors. The Second Circuit vacated the Judgment as against the Intervenors and remanded their case for retrial. The Intervenors allege that, as directors and officers of Trace, they are entitled to payment of their defense costs (both in connection with the first trial and the retrial) and indemnification from any judgment against them under Defendants' insurance policies[16] in connection with a retrial. (See

---

[16] The costs and judgment would appear fall under the general category of "Loss" as contained in the policies. See supra note 6.

Notice of Mot. for Intervention, Ex. A, "Proposed Intervention Complaint," ¶¶ 10, 16.).

The Court also finds that disposition of the instant action may adversely affect the Intervenors' ability to secure insurance proceeds under Defendants' policies. A finding that Plaintiff is entitled to all remaining proceeds under Defendants' policies could prevent the Intervenors from receiving coverage of defense costs and future indemnification for any judgments against them. Similarly, a judgment in favor of Defendants that they do not have any further obligations under the policies would make it difficult for the Intervenors, as beneficiaries of these policies, to recover defense costs and any future indemnification.

The Court finds that the Intervenors' interests are not adequately protected by the current parties to the action. Defendants take the position that they have no further obligations under the policies and Plaintiff only seeks monetary judgment for the estate. Thus, none of the parties advocates for the Intervenors' claims of a right to payment of defense costs and indemnification in connection with the retrial.

Finally, the Court finds that the application for intervention is timely. Courts examine the totality of circumstances in making a determination of timeliness. See D'Amato v. Deutsche Bank, 236 F.3d 78, 84 (2d Cir. 2001). "Circumstances considered in this determination include: (1) how long the applicant had notice of the interest before [he] made the motion to intervene; (2) prejudice to the existing parties resulting from any delay; (3) prejudice to the applicant if the motion is denied; and (4) any unusual circumstances militating for or against a finding of timeliness." Id. (internal quotations omitted). The Court notes that the application for intervention was filed on January 23, 2006, nearly two years after the instant case was filed in this District on February 11, 2004. However, the Second Circuit decision reversing the judgment in the Underlying Action as to the Intervenors and remanding the case for a jury trial was not rendered

until June 30, 2005. So, at least in connection with defense costs and any future indemnification associated with the retrial, the Intervenors were not aware until after this decision of their direct interest in seeking reimbursement for these costs under the policies. See, e.g., Werbungs Und Commerz Union Austalt v. Collectors' Guild, Ltd., 782 F. Supp. 870, 874 (S.D.N.Y. 1991) (finding that application for intervention filed almost two years after notice of interest in case was timely because application filed shortly after interest became direct). In any event, the Court does not find that the delay between the filing of the instant action and the filing of the intervention application, when weighed with the other factors, warrants denial of intervention. See, e.g., United States v. Pitney Bowes, Inc., 25 F.3d 66, ("[T]he time lapsed between notice of an interest in pending litigation and an application to intervene is only one of several factors a district court must weigh when deciding the issue of timeliness."). The Court notes in this connection that there is no prejudice to the existing parties as a result of this delay but that, as explained above, the Intervenors will be prejudiced if the application is denied.

In the alternative, the Court finds that permissive intervention is warranted under Rule 24(b)(2). Under this provision, a would-be party can be permitted to intervene "when an applicant's claim or defense and the main action have a question of law or fact in common." Fed. R. Civ. P. 24(b)(2) (West 2006). "In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties." Id. The Court finds that there are common questions of law and fact, that no such undue delay or prejudice will result from intervention and that, for substantially the reasons stated in its analysis of intervention as of right, permissive intervention is appropriate.


*Preliminary Injunction Motion*

The Intervenors move for a preliminary injunction "preserving the status quo by preventing the defendants from paying any monies under the Policies to [Plaintiff] . . . and . . . directing that the defendants continue to advance 'defense costs' [to the Intervenors] for retrial of the Prior Action." (Mem. in Supp. of Mot. for Intervention at 13.) In the Second Circuit, the standard for preliminary injunctive relief ordinarily requires the moving party to show that: (1) it is likely to suffer irreparable injury; and (2) either (a) a likelihood of success on the merits of its case; or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in its favor. Green Party of New York State v. New York State Bd. of Elections, 389 F.3d 411, 418 (2d Cir. 2004). "Irreparable harm is an injury that is not remote or speculative but actual or imminent, and for which a monetary award cannot be adequate compensation." Tom Doherty Assocs., Inc. v. Saban Entm't, Inc., 60 F.3d 27, 37 (2d Cir. 1995) (internal quotations omitted).

The Court finds that a preliminary injunction is not warranted, as the Intervenors have not made a showing of irreparable harm.[17] The Intervenors only allege monetary harm in that they may not receive all the insurance proceeds due to them. They do not even allege that they will be unable to mount their defense in the retrial without the insurance advances. Thus, the Intervenors have failed to demonstrate the requisite irreparable harm.

---

[17]    Defendants indicate that they have not advanced any defense costs to the Intervenors. To the extent then that the Intervenors seek such costs, their request for injunctive relief would amount to a mandatory injunction rather than the requested prohibitory injunction seeking to keep the status quo. See Tom Doherty Assocs., Inc., 60 F.3d 27 at 33-4. The former requires an even greater showing of harm "where extreme or very serious damage will result from a denial of preliminary relief." Id. at 34 (internal quotations omitted). Because the Intervenors have not made a showing of irreparable harm for a prohibitory injunction, they have not, a fortiori, made a showing of the harm required for a mandatory injunction.

<u>CONCLUSION</u>

For the foregoing reasons, Gulf's and Executive's motion to dismiss the complaint is granted to the extent it seeks to exclude coverage of the portion of the Judgment representing monies wrongfully obtained by Cogan and Nelson and is denied in all other respects, NUFIC's motion to dismiss is denied in its entirety, and Farace's and Smith's motion for intervention is granted but their application for a preliminary injunction is denied.

The parties shall appear in Courtroom 17C, United States Courthouse, 500 Pearl Street, New York, NY 10007, for a pretrial conference on August 22, 2006 at 10:45 a.m. and shall file their Joint Preliminary Pretrial Statement (with a courtesy copy to chambers) by August 15, 2006.

SO ORDERED.

Dated: New York, New York
       July 12, 2006

LAURA TAYLOR SWAIN
United States District Judge

Copies mailed 7/12/06
Chambers of Judge Swain