UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x

JOHN S. PEREIRA, Trustee of Trace International
Holdings, Inc., in his capacity as judgment creditor
in Pereira v. Cogan, et al., 00 Civ. 619 (RWS),

        Plaintiff,

   -v-

NATIONAL UNION FIRE INSURANCE
COMPANY OF PITTSBURGH, PA., GULF
INSURANCE COMPANY, and EXECUTIVE
RISK INDEMNITY INC.,

        Defendants.

--------------------------------------------------------x

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: SEP 0 5 2007

No.  04 Civ. 1134 (LTS)(THK)

## OPINION AND ORDER

APPEARANCES:

DREIER LLP
  By: John P. Campo, Esq.
      John S. Kinzey, Esq.
499 Park Avenue
New York, NY 10022

*Attorneys for Plaintiff*

HELLER, HOROWITZ & FEIT, P.C.
  By: Eli Feit, Esq.
292 Madison Avenue
New York, NY 10017

*Attorneys for Intervenor Phillip Smith*

KORSTEIN VEISZ & WEXLER
  By: Marvin Wexler, Esq.
757 Third Avenue
New York, NY 10017

*Attorneys for Defendant Executive Risk
Insurance Company*

LAURA TAYLOR SWAIN, United States District Judge

Copies mailed *Served Counsel /record*
Chambers of Judge Swain   9/5/07

Plaintiff John S. Pereira (the "Trustee" or "Plaintiff"), as Trustee of Trace

International Holdings, Inc. ("Trace"), brings this action to collect insurance proceeds allegedly due

to him by virtue of a judgment entered against Defendants' insureds by the court in Pereira v.

Cogan, 00 Civ. 619 (RWS).  Defendant Executive Risk Indemnity Inc. ("ERII"), one of the

defendant insurance companies, moves the Court for summary judgment in its favor pursuant to

Federal Rule of Civil Procedure 56.  The Court has jurisdiction of the instant action pursuant to 28

U.S.C. § 1334(b).

The Court has considered carefully the parties' submissions and arguments.  For the

following reasons, the Court grants in part and denies in part ERII's motion for summary judgment.


### BACKGROUND

The following material facts are not disputed.[1]  On or about July 21, 1999, Trace filed

a petition for reorganization under Chapter 11 of the Bankruptcy Code in the United States

Bankruptcy Court for the Southern District of New York.  On or about October 18, 1999, the

Creditors Committee, with permission of the bankruptcy court, commenced an action on behalf of

the Trace estate against former CEO Marshall Cogan ("Cogan") and other current and former officers

and directors of Trace, alleging breaches of fiduciary duties and violations of Delaware law.  On or

about January 24, 2000, Trace's bankruptcy case was converted to a liquidation under Chapter 7 of

the Bankruptcy Code, and the Trustee was appointed as trustee for Trace's estate.  The Trustee was

---

[1]     The following facts, unless otherwise indicated, are found in ¶¶ 1-37 of Defendant's
Statement Pursuant to Local Rule 56.1 setting forth material facts as to which
Defendant contends there is no genuine issue to be tried.  According to Plaintiff's
Statement Pursuant to Local Rule 56.1, Plaintiff does not dispute the factual
assertions made in ¶¶ 1-37 of Defendant's Statement.

subsequently substituted as the plaintiff in that case, which was thereafter styled Pereira v. Cogan

("Cogan"). On June 25, 2003, the court (Sweet, J.) entered judgment in Cogan against various

directors and officers, including Robert H. Nelson ("Nelson"), Karl Winters ("Winters") and Philip

N. Smith, Jr. ("Smith"). Pereira v. Cogan, 294 B.R. 449 (S.D.N.Y. 2003).


### The Cogan Judgment

The plaintiff in Cogan had asserted five causes of action ("Counts") against directors

and officers of Trace; each Count was supported by various sets of alleged facts. The court's final

judgment entered against the defendants consisted of a detailed breakdown in which each portion of

the judgment was itemized and identified by reference to the corresponding Count, specified the

affected defendant(s), and detailed the court's relevant findings of fact, including the award of

damages attributable to that portion of the judgment.[2]  Each set of factual findings and

corresponding award of damages in the final judgment was categorized by a specific label.  For

defendant Nelson, there were itemized judgment amounts for his liability in connection with "Cogan

borrowings-principal", "Excess Compensation-principal", "Loans to other insiders (Maureen,

Lowrance, Lento, Nelson)", "Birthday Party Film", "Dow Redemption", and "Dividends" for Count

IV (Breach of Fiduciary Duty); and "Dow Redemption" and "Dividends" for Count V (Illegal

Dividends and Share Redemption).  (Cogan Final J., annexed to April 27, 2004 Affidavit of Lisa B.

Lance as Ex. E at 6-7, 10.)  For defendant Winters, there was an itemized judgment amount for his

---

[2]     The judgment is initially broken down by Count.  Within each Count, the judgment is
        broken down by the affected defendant.  For each affected defendant, the judgment
        provides a further liability breakdown with corresponding sets of factual findings,
        which are each identified by a specific label.  Because some sets of factual findings
        correspond to more than one Count, some sets of factual findings are listed multiple
        times throughout the judgment.

liability in connection with "Cogan borrowings-principal", "Loans to other insiders (Lento)", and "Dow Redemption" for Count IV. (Id. at 9-10.)

The groups of factual findings identified by these labels can be summarized as follows.

**"Cogan borrowings-principal."** From March 31, 1995, to November 2, 1998, Cogan caused Trace to execute a series of loans to Cogan totaling $13,411,712.52. The Notes that were executed in effectuating these loans carried a 9% annual interest rate and provided Trace with no collateral security, while Trace had to borrow the funds it lent to Cogan at interest rates as high as 23% coupled with significant restrictions on Trace's principal assets. Both Nelson and Winters were aware of the loans. Cogan, 294 B.R. at 490-93.

**"Loans to other insiders (Lento)."** Helen Lento ("Lento") was Cogan's administrative secretary. In 1991, she received a $300,000 loan from Trace. Although this loan was properly authorized at the time of issuance, in 1997, Cogan caused Trace to forgive the 1991 loan in the form of a $558,000 bonus, which included the income taxes on such forgiveness. Both Nelson and Winters were involved in implementing this transaction. Id. at 494.

**"Loans to other insiders (Maureen, Lowrance, Nelson)."** In 1996, Cogan unilaterally directed Nelson to have Cogan's wife, Maureen Cogan ("Maureen") receive $1,000 per week, which eventually aggregated to $161,000 in loans. In 1996, George Lowrance ("Lowrance"), the executive vice president and general counsel of one of Trace's affiliates, received a $43,000 loan from Trace to assist him when he was separating from his wife. In 1998, Cogan forgave the $43,000 loan. In 1995, Nelson himself received a $300,000 loan from Trace, and an additional $300,000 loan in 1998. Nelson either effectuated or was aware of these loans. Id. at 493-95.

**"Dow Redemption."**  In 1992, Trace sold 1,000 shares of Trace Series A Preferred Stock to one of Dow's debtors, BSI, for $20 million, which BSI pledged to Dow as security for its $20 million debt.  In October 9, 1997, Cogan committed Trace to redeem or to cause the purchase of Dow's investment in Trace over a three-year period commencing with a $3 million installment by May 1998.  Because causing Trace to redeem the Dow stock would legally obligate Trace to also pay its dividend arrearages of $2 million, Nelson, Winters, and others arranged to have Trace lend $3 million to Cogan, who in turn would purchase the Dow Shares.  Cogan then pledged the Dow Shares to Trace.  Id. at 486-88.

**"Excess Compensation-principal."**  From 1993 to 1994, Cogan received, and the Board, which included Nelson, approved, excess compensation totaling $4,207,303 from Trace.  Id. at 490.

**"Dividends."**[3]  From February 1995 to June 1998, Trace paid dividends aggregating $5,122,989, and Nelson and other Board members failed to demonstrate that the dividends were at a fair price to Trace, thereby breaching their fiduciary duty (Count IV).  Id. at 488-90, 535.  Of those dividends, $4,309,823 was paid during a period of insolvency, which was illegal under Delaware law (Count V).  Id. at 539-40.

**"Birthday Party Film."**  Trace paid $1,069,586 for a birthday party at a museum to celebrate Cogan's 60th birthday but also to generate additional business for Trace by inviting important clients.  The party included the screening of a film entitled "The Life of Marshall Cogan," which was produced at a cost of $108,000 in company funds.  The court found that, of the entire

---

[3]     The "Dividends" set of factual findings in connection with Count IV is identical to the "Dividends" set of factual findings in connection with Count V.  See Cogan, 294 B.R. at 512.

birthday party expenditure, only the cost of the film was excessively extravagant, and held Nelson and others liable for the cost of the film. Id. at 495-96, 538-39.

### D & O Liability Insurance Policies

Trace had purchased and maintained directors and officers ("D & O") liability insurance from the defendant insurers and from Reliance National Company ("Reliance"). The defendant insurers and Reliance provided D & O coverage to indemnify the directors and officers from liabilities and reasonable litigation expenses in the following manner: National Union Fire Insurance Company ("NUFIC") provided the primary layer up to $10 million; Reliance provided the first excess layer above $10 million and up to $20 million; Gulf Insurance Company ("Gulf") provided the second excess layer above $20 million and up to $30 million; ERII provided the third excess layer above $30 million and up to $40 million; and Reliance provided a fourth and final excess layer above $40 million and up to $50 million.

### Claims Asserted in this Action

Plaintiff brought this action to collect insurance proceeds allegedly due to him by virtue of the Cogan judgment. Plaintiff's claims for indemnity are limited to Nelson and Winters, because the judgment as entered against the other defendants has since been either vacated[4] or settled.[5] (See Def.'s Mem. of Law in Supp. of Mot. for Summ. J. ("Def.'s Mot. for Summ. J.") at 2;

---

[4]     See Pereira v. Farace, 413 F.3d 330 (2d Cir. 2005) (vacating judgment as against Frederick Marcus, Andrea Farace, and Philip Smith and remanding to district court for a jury trial).

[5]     Def.'s Local Rule 56.1 Statement ¶ 30 ("As part of the settlement with Mr. Cogan, Plaintiff has given Mr. Cogan a Satisfaction of Judgment.").

E-mail from Plaintiff's Counsel dated October 4, 2006, annexed to November 2, 2006, Affidavit of

Marvin Wexler as Ex. CC at 3 (conceding that indemnity liability only lay with respect to Nelson

and Winters).) Andrea Farace ("Farace") and Philip Smith ("Smith"), defendants in the Cogan

action, sought and have been granted intervenor status in this action.


### The Prior Litigation Exclusion

ERII's insurance policy contained a "prior litigation exclusion," which provided as

follows:

> In consideration of the premium charged, [ERII] shall not be liable to make any
> payment for loss in connection with any claim made against any of the Insureds based
> on, arising out of, directly or indirectly resulting from, in consequence of, or in any
> way involving:
> (a) any prior and/or pending litigation as of July 6, 1998; or
> (b) any fact, circumstance or situation underlying or alleged in any prior and/or
> pending litigation as of July 6, 1998.

(ERII Insurance Policy, annexed to Lance Aff. as Ex. D at 11.)

As of July 6, 1998, the operative date for purposes of the prior litigation exclusion

quoted above, litigation was pending against former directors and officers of Trace. On or about

August 21, 1996, an action styled Barbuto v. Cogan Int'l Holdings, Inc. et al., C.A. No. 15175

("Barbuto"), had been filed on behalf of Trace in the Court of Chancery, New Castle County,

Delaware, naming various Trace officers and directors as defendants and alleging breaches of

fiduciary duties and violations of Delaware law. No final judgment was ever entered in Barbuto.

Pereira v. Cogan, 294 B.R. 449, 490 (S.D.N.Y. 2003).

## DISCUSSION

ERII moves for summary judgment, arguing, inter alia, that the alleged facts in
Barbuto are so similar to those at issue in the Cogan lawsuit that the prior litigation exclusion of
ERII's policy clearly and unambiguously excludes the Cogan judgment from ERII's insurance
coverage as a matter of law. Plaintiff and Intervenor Smith filed separate oppositions to ERII's
motion.

### Summary Judgment Standard -- Prior Litigation Exclusions

Summary judgment is appropriate where "the pleadings, depositions, answers to
interrogatories, and admissions on file, together with the affidavits, if any, show that there is no
genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter
of law." Fed. R. Civ. P. 56(c). To defeat a motion for summary judgment, the non-movant must set
forth specific facts which establish a genuine issue for trial, or demonstrate that the moving party is
not entitled to judgment as a matter of law. Fed. R. Civ. P. 56(e); see Anderson v. Liberty Lobby,
Inc., 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

Under New York law, "the initial interpretation of a contract is a matter of law for
the court to decide." K. Bell & Assoc. v. Lloyd's Underwriters, 97 F.3d 632, 637 (2d Cir. 1996).
"Included in this initial interpretation is the threshold question of whether the terms of the contract
are ambiguous." Alexander & Alexander Serv., Inc. v. Certain Underwriters at Lloyd's, London,
136 F.3d 82, 86 (2d Cir. 1998). Contract terms are ambiguous if they suggest

> more than one meaning when viewed objectively by a reasonably intelligent person
> who has examined the context of the entire integrated agreement and who is
> cognizant of the customs, practices, usages and terminology as generally understood
> in the particular trade or business.

Lightfoot v. Union Carbide Corp., 110 F.3d 898, 906 (2d Cir. 1997). When a contract is not

ambiguous, the court "should assign the plain and ordinary meaning to each term and interpret the

contract without the aid of extrinsic evidence." Alexander, 136 F.3d at 86. On the other hand,

when a contract is ambiguous, the court should consider extrinsic evidence, in which case disputed

issues of fact will usually preclude deciding the case on summary judgment. See Seiden Assocs. v.

ANC Holdings, Inc., 959 F.2d 425, 428-29 (2d Cir. 1992).

In cases where an insurer claims that a particular exclusion provision of the contract

applies, the insurer bears the burden of proving that the policy's exclusions "clearly and

unmistakably" apply to the insured's claims. Vill. of Sylvan Beach v. Travelers Indem. Co., 55 F.3d

114, 115-16 (2d Cir. 1995).

### The Prior Litigation Exclusion

The prior litigation exclusion in this case is reproduced below for the convenience of

analysis:

> In consideration of the premium charged, [ERII] shall not be liable to make any
> payment for loss in connection with any claim made against any of the Insureds based
> on, arising out of, directly or indirectly resulting from, in consequence of, or in any
> way involving:
> (a) any prior and/or pending litigation as of July 6, 1998; or
> (b) any fact, circumstance or situation underlying or alleged in any prior and/or
> pending litigation as of July 6, 1998.

(Lance Aff. Ex. D at 11.)

Intervenor Smith argues in his opposition to ERII's motion for summary judgment

that the prior litigation exclusion in this case is ambiguous,[6] specifically noting the terms, "based on,

---

[6]     Plaintiff, however, does not argue that the prior litigation exclusion is ambiguous;
        rather, Plaintiff argues generally that the facts alleged in Barbuto and the claims in

arising out of, directly or indirectly resulting from, in consequence of, or in any way involving . . . ."

Smith argues that this ambiguity is compounded by the fact that ERII's policy also incorporates the

prior litigation exclusions of the other insurers' policies,[7] which in turn contain similar connector

terms.[8]

However, the particular structure of the prior litigation exclusion in the ERII policy

does not require ERII to demonstrate that every term in the clause is unambiguous.  The exclusion

clause lists <u>many</u> possible relationships that <u>Barbuto</u> and <u>Cogan</u> may have to one another such that

the <u>Cogan</u> judgment would be barred from coverage, and it does so with the use of the critical

conjunction "or."  <u>See</u> <u>Zunenshine v. Executive Risk Indem., Inc.</u>, No. 97 Civ. 5525 (MBM), 1998

WL 483475, at *5 (S.D.N.Y. Aug. 17, 1998) (noting that "both exclusions are phrased in the

disjunctive, that is, a claim is excluded if it arises out of 'any fact, circumstance situation,

transaction, event <u>or</u> Wrongful Act'" (emphasis in original)).  Therefore, the phrase, "based on,

arising out of, directly or indirectly resulting from, in consequence of, or in any way involving"

---

<u>Cogan</u> are so different that there is a genuine issue of material fact as to whether the prior litigation exclusion applies.  As explained <u>infra</u>, however, most of the relevant portions of <u>Cogan</u> judgment overlap substantially if not entirely with the <u>Barbuto</u> pleadings.  The portions of the <u>Cogan</u> judgment that do not are also discussed <u>infra</u> and, as to those portions, the Court finds that ERII has not carried its burden of demonstrating that it is entitled to judgment as a matter of law.

[7]   "Except as specifically set forth in the terms, conditions or endorsements of this policy, coverage hereunder shall apply in conformance with the terms, conditions and endorsements of the policy immediately underlying this policy . . . ."  (Lance Aff. Ex. D at 3.)

[8]   The NUFIC exclusion employs the terms, "arising out of, based upon or attributable to" and "derived from the same or essentially the same facts."  (NUFIC Insurance Policy, annexed to Lance Aff. as Ex. A at 12.)  The Reliance policy uses the terms "arising from" and "based on substantially the same matters."  (Reliance Insurance Policy, annexed to Lance Aff. as Ex. B at 10.)  The Gulf policy uses the same terms as Executive's policy.  (Gulf Insurance Policy, annexed to Lance Aff. as Ex. C at 4.)

(Lance Aff. Ex. D at 11), clearly means that the latter litigation may be "based on" or "arising out of" or "directly . . . resulting from" or "indirectly resulting from" or "in consequence of" or "in any way involving" the prior litigation. Similarly, with regards to the prior litigation, the phrase, "(a) any prior and/or pending litigation as of July 6, 1998; or (b) any fact, circumstance, or situation underlying or alleged in any prior and/or pending litigation as of July 6, 1998" (id.), clearly means that the latter litigation is covered by the exclusion if it bears any of the preceding relationships to "any prior and/or pending litigation as of July 6, 1998" or to any "fact" or any "circumstance" or any "situation" that is "underlying" or "alleged" in "any prior and/or pending litigation as of July 6, 1998".[9] Cf. Bensalem Township v. Int'l Surplus Lines Ins. Co., No. 91 Civ. 5315, 1992 WL 142024, at *2 (E.D. Pa. June 15, 1992) (parsing prior litigation exclusion). Accordingly, ERII need only show that Cogan clearly bears one of the several possible relationships with Barbuto that are described in the clause.[10] See Highwoods Props., Inc. v. Executive Risk Indem., Inc., No. 03-0077-

---

[9]     Obviously, the chain of disjunctive groupings may be further broken down in mathematical fashion, but the above illustrations suffice to make the point.

[10]    In the cases cited by Smith and ERII, courts construing similarly-worded prior litigation exclusion clauses appear to have found it sufficient that one aspect of a disjunctive catalogue of possible relationships to prior litigation is applicable, although it is not always clear whether their determinations are based on one of the possible relationships or on all of the possible relationships considered as a whole. See Nvidia Corp. v. St. Paul Mercury Ins. Co., No. 05-438278 (annexed to Intervenor Smith's Mem. of Law in Opp'n at 4, 4 n.2) (construing same prior litigation exclusion to require that the defendant establish a "causal connection" between the prior litigation and the latter litigation, and noting separately that the term "based on" appeared to be the "controlling phrase"); Zunenshine, 1998 WL 483475, at *4 (in a case involving similar prior litigation exclusion, examining whether there is a "sufficient factual nexus" between the two lawsuits); Seneca Ins. Co. v. Kemper Ins. Co., No. 02 Civ. 10088 (PKL), 2004 WL 1145830, at *6-*8 (S.D.N.Y. May 21, 2004) (same); Home Ins. Co. of Ill. (N.H.) v. Spectrum Info. Techs., Inc., 930 F. Supp. 825, 850 (E.D.N.Y. 1996) (same). To the extent that these cases support an approach that derives one interpretation concerning the relationship between the two lawsuits from the disjunctive catalogue of possible relationships as a whole rather than any one particular term, that approach is rejected

CV-W-NKL, 2004 WL 4986355, at *9 (W.D.Mo. May 11, 2004) ("the Court need not determine whether Exclusion 2 or 3 applies in this case, because the Court finds that ERII Risk's liability is clearly precluded under Exclusion 4.").

As will be explained infra, the unambiguous contents of the ERII policy, the Cogan judgment and the Barbuto complaint clearly demonstrate that most of the claims in Cogan fall under one of the avenues listed in the prior litigation exclusion and that the judgment related to those claims is thus excluded from coverage.  The relevant, unambiguous, terms of the ERII prior litigation exclusion are underscored below:

> In consideration of the premium charged, [ERII] shall not be liable to make any payment for loss in connection with any claim made against any of the Insureds based on, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving:
> (a) any prior and/or pending litigation as of July 6, 1998; or
> (b) any fact, circumstance or situation underlying or alleged in any prior and/or pending litigation as of July 6, 1998.

(Lance Aff. Ex. D at 11.)  The relevant, unambiguous portion of the exclusion thus reads, when the other terms are excised, as follows: "In consideration of the premium charged, [ERII] shall not be liable to make any payment for loss in connection with any claim made against any of the Insureds . . . in any way involving . . . any fact . . . alleged in any . . . pending litigation as of July 6, 1998."  (Id.)

Comparison of the "Claims"[11] Made in Cogan with the "Facts Alleged" in Barbuto

---

in this case, because such an approach implicitly requires the Court to hold that every term in the disjunctive list is sufficiently unambiguous for interpretation on a motion for summary judgment.  As noted above, such a holding is not necessary in this case.

[11]    "Courts have found that the term 'claim' as used in liability insurance policies is unambiguous and generally means a demand by a third party against the insured for money damages or other relief owed."  Home Ins. Co. of Ill. (N.H.) v. Spectrum Info. Techs., Inc., 930 F. Supp. 825, 846 (E.D.N.Y. 1996) (citing several cases

A "claim" is a demand made against the insureds for money damages. See Spectrum, 930 F. Supp. at 846. The final judgment in Cogan, which broke the various monetary portions of the judgment down by Count and defendant, and identified the corresponding discrete sets of factual findings, makes determination of the "loss" in connection with the "claims" made against the insureds in this case straightforward.[12] Therefore, each itemized judgment amount (together with corresponding prejudgment interest and, where applicable, late charges) listed in the final judgment of Cogan constitutes a separate "loss in connection with [a] claim."

The "fact[s] . . . alleged in any . . . pending litigation as of July 6, 1998" in this case are the facts alleged in the Barbuto complaint,[13] since that suit was filed on or about August 21, 1996, and had not resolved by July 6, 1998.[14]   See Zunenshine, 1998 WL 483475, at *4 (examining on summary judgment the facts alleged in the complaint of a prior lawsuit in applying a prior litigation exclusion with similar language on summary judgment motion); Bensalem Township, 1992 WL 142024, at *2.

Therefore, the Court compares the facts underlying the damages awards in Cogan as specified in the Cogan final judgment with the facts alleged in Barbuto in order to determine

---

defining "claim" even when "claim" was not explicitly defined in the insurance policy). Thus, a single lawsuit may contain several "claims." Id. at 847.

[12]   Since contract interpretation is a matter of law, K. Bell, 97 F.3d at 637, a court may properly define the separate "claims" as applied to a particular case on a motion for summary judgment. See, e.g., Checkrite Ltd., Inc. v. Ill. Nat'l Ins. Co., 95 F. Supp. 2d 180, 191 (S.D.N.Y. 2000); Nat'l State Bank, Elizabeth, N.J. v. Am. Home Assurance Co., 492 F. Supp. 393, 397 (S.D.N.Y. 1980); Doctor's Co. v. Ins. Corp. of Am., 864 P.2d 1018, 1024-27 (Wyo. 1993).

[13]   The Court will refer to the First Amended Complaint in Barbuto as the "Barbuto complaint." (See Pl. Barbuto's First Am. Compl., annexed to Wexler Aff. as Ex. M.)

[14]   Plaintiff does not argue otherwise in its Opposition.

whether ERII's insurance policy covers the claims based on the <u>Cogan</u> judgment as a matter of law.

<u>Certain Claims Arising from Cogan are Barred by the Prior Litigation Exclusion</u>

As explained in this section, ERII's prior litigation exclusion unambiguously precludes coverage of most of the claims in <u>Cogan</u>. The Court therefore grants Defendant's motion for summary judgment in its favor as to claims for coverage of amounts awarded in <u>Cogan</u> in connection with the following aspects of the <u>Cogan</u> judgment:

**"Cogan borrowings-principal."** The portion of the <u>Cogan</u> judgment relating to the "Cogan borrowings-principal" claims against Nelson and Winters is unambiguously excluded by ERII's prior litigation exclusion. The <u>Barbuto</u> complaint alleged: "Cogan also has used his authority to obtain unsecured personal loans of at least $2 million from Trace's capital funds, on favorable terms unavailable from a bank or other regulated lending institution." (Wexler Aff. Ex. M ¶ 13.) The <u>Cogan</u> court found Nelson and Winters liable for the approval of $13,411,712.52 in loans to Cogan from March 1995 to November 1998 at a 9% interest rate to the detriment of Trace, which borrowed money at a 23% interest rate just to fund the loans to Cogan. <u>Cogan</u>, 294 B.R. at 491-93. (<u>See also</u> Plaintiff's Third Am. Compl. filed in <u>Cogan</u>, annexed to Wexler Aff. as Ex. K ¶¶ 10-16, 51.)[15] The discovery and trial in <u>Cogan</u>, resulting in the findings of fact set forth in the judgment, precisely flesh out the factual allegations in <u>Barbuto</u>. Therefore, the <u>Cogan</u> judgment in connection

---

[15]     In comparing the two lawsuits, the parties' submissions frequently reference the <u>Cogan</u> complaint rather than the <u>Cogan</u> final judgment (<u>see, e.g.</u>, Def.'s Mot. for Summ. J. at App. A (comparing textual portions of both complaints side-by-side); Intervenor Smith Opp'n at 5 ("the allegations in the Barbuto Action are distinct from the allegations in the Pereira Action")). The Court provides citations to the <u>Cogan</u> complaint to demonstrate that the result would be the same even if this Court were to focus on the <u>Cogan</u> complaint rather than on the <u>Cogan</u> judgment.

with the "Cogan borrowings-principal" claim "involves"[16] the facts alleged in Barbuto.

"**Excess Compensation-principal.**" The portion of the Cogan judgment in connection with the "Excess Compensation-principal" claim against Nelson is unambiguously excluded by ERII's prior litigation exclusion. The Barbuto complaint asserted that Cogan, "[t]hrough his controlling interest in Trace and, with the approval and acquiescence of the Cogan [sic] Directors," used Trace's cash to pay "unjustified and excessive corporate expenses for the benefit of Cogan, including but not limited to the salaries and benefits of Cogan . . . ." (Wexler Aff. Ex. M ¶ 13.) As a factual example, it alleged that Cogan directed that his base salary be set at not less than $2.4 million per annum and that Cogan was granted bonuses bringing his total compensation to "as high as $7 million a year or more" between 1994 and 1997. (Id.) The Cogan court found Cogan's actual salary of $3.9 million in 1993 and $8.4 million in 1994 to be excessive by a total of $4,207,303. Cogan, 294 B.R. at 490. (See also Wexler Aff. Ex. K ¶¶ 18-21.) The findings of Cogan are consistent with the factual allegations of Barbuto at least for the relevant time period of 1993 to 1994. The claim based on the Cogan judgment in connection with the "Excess Compensation-principal" claim against Nelson therefore clearly involves facts alleged in Barbuto.

"**Dow Redemption.**" The portion of the Cogan judgment in connection with the "Dow Redemption" claims against Nelson and Winters is also unambiguously within the scope of ERII's prior litigation exclusion. The Barbuto complaint specifically details Trace's issuance of

---

[16]   The Court notes that the prior litigation exclusion does not merely exclude claims that "involve" alleged facts in past litigation, it also excludes claims that involve "in any way" alleged facts in past litigation. It is therefore not necessary for ERII to demonstrate a complete overlap between the claims and the alleged facts in order to preclude coverage. See also Zunenshine, 1998 WL 483475, at *5 ("Nothing in the Policy requires that a claim involve precisely the same parties, legal theories, wrongful acts . . . . [Under the plaintiff's reading,] a claim would be excluded only if it were based on an identical lawsuit . . .").

1,000 shares of Series A Preferred Stock to Dow at $20 per share in 1992 and its subsequent

redemption of those shares in 1995 "through a complex series of transactions designed to disguise

the unlawful redemption." (Wexler Aff. Ex. M ¶ 10.) The <u>Cogan</u> court specifically found those

factual allegations to be true, with the exception that Trace technically sold the 1,000 shares to

Dow's debtor, in entering the "Dow Redemption" judgment against Nelson and Winters. The

<u>Cogan</u> court's opinion further described in detail what the "complex series of transactions" entailed.

<u>Cogan</u>, 294 B.R. at 486-88. (<u>See also</u> Wexler Aff. Ex. K ¶¶ 40-42.) Therefore, the aspect of the

<u>Cogan</u> judgment assessing liability in connection with the "Dow Redemption" clearly involves facts

alleged in <u>Barbuto</u>.

      **"Dividends."** The Court holds that the portion of the <u>Cogan</u> judgment relating to

the "Dividends" claims against Nelson is unambiguously covered by ERII's prior litigation

exclusion. The <u>Barbuto</u> complaint alleged that Trace paid out dividends to the holders of the Series

A Preferred Stock on a quarterly basis at a time when Trace's capital was impaired, and that it had

to borrow at interest rates of up to 30% just to maintain the dividend payments. (Wexler Aff. Ex.

M ¶ 9-10.) The complaint further alleged that the holders of Trace's "Convertible Preferred Stock,"

including the plaintiff in <u>Barbuto</u>, did not receive dividends due to them except for one payment in

the "fall of 1996" and another late payment on or about January 10, 1997. (Id.) The <u>Cogan</u>

decision specifically lays out the schedule of Trace's payments of dividends, demonstrating that

dividends were paid on a quarterly basis to Series A Preferred Stock shareholders, as the <u>Barbuto</u>

complaint alleged. It also shows that a payment was made to Convertible Preferred Stock

shareholders in December 1996 and in July of 1997. <u>Cogan</u>, 294 B.R. at 489. The <u>Cogan</u> court

found that these payments violated the Board's fiduciary duties because they were distributed at a

time when Trace was consistently operating $13 million in the red and relying on loans taken out on

its assets, id. at 535, which is consistent with Barbuto's allegation that Trace's capital was impaired during that same time period. (See also Wexler Aff. Ex. K ¶¶ 60-63.) Therefore, notwithstanding the one dividend payment to the Convertible Preferred Stock shareholders misdated by the Barbuto complaint, the Court finds that the virtually complete overlap between the facts underlying the "Dividends" claim in Trace and the facts alleged in Barbuto demonstrates that the claim based on the "Dividends" findings in Cogan clearly involve the facts alleged in Barbuto.

## Other Claims Based in Cogan are Not Clearly Barred by the Prior Litigation Exclusion

There are, however, ambiguities and genuine issues of material fact that preclude summary judgment as to whether the remaining claims in Cogan are excluded by the prior litigation exclusion. The Court therefore denies ERII's motion for summary judgment with regards to the following claims:

**"Loans to other insiders."** The Cogan judgment connected with the "Loans to other insiders" claims against Nelson and Winters is not unambiguously excluded by ERII's prior litigation exclusion, as there is no mention whatsoever of loans to other persons in the Barbuto complaint. Furthermore, ERII does not advance any argument as to how this part of the Cogan judgment might be excluded from coverage. Since the record is ambiguous and the Court must draw all reasonable inferences in favor of the nonmoving party, ERII has not demonstrated that it is entitled to a judgment as a matter of law concerning the "Loans to other insiders" claim.

**"Birthday Party Film."** There is a genuine issue of fact as to whether the Cogan judgment connected with the "Birthday Party Film" claim against Nelson is excluded by ERII's prior litigation exclusion. The Barbuto complaint did allege "excessive corporate expenses for the

benefit of Cogan, including but not limited to the salaries and benefits of Cogan." (Wexler Aff. Ex.

M ¶ 13.) However, it is unclear whether the allegation that Trace provided excessive "benefits" to

Cogan is specific enough to be an "alleged fact" that is in any way involved with the showing of an

expensive birthday party film, and ERII does not advance any argument to support exclusion of the

"Birthday Party Film" claim. Given this ambiguous record and the requirement that all reasonable

inferences be drawn in favor of the nonmoving party, ERII is not entitled, on this record, to

judgment as a matter of law on this issue.

### Future Likelihood of Coverage Has No Bearing on Summary Judgment Decision

The above holdings establish that some of the largest losses in the Cogan judgment

are not covered by ERII's policy as a matter of law, which arguably results in a low likelihood that

ERII's $30 million coverage threshold will ever actually be reached.[17]  However, claims against the

other Cogan defendants are still outstanding, and additional settlements may be reached, which in

turn may affect the quantum of the covered losses,[18] and Plaintiff's total legal fees have yet to be

determined.[19]  ERII has therefore failed to demonstrate that it is entitled to summary judgment

---

[17]  The portions of the judgment connected to the "Loans to other insiders" and "Birthday Party Film" claims against Nelson and Winters, the claims that are not unambiguously excluded by the prior litigation exclusion, only total approximately $3 million.  (Lance Aff. Ex. E at 6-10.)

[18]  The parties make extensive arguments as to how existing settlements and judgment amounts already paid should reduce the losses that ERII should allegedly cover.  The parties do not cite any especially helpful case law, nor do they point to any provision in the insurance policies governing such situations.  Absent any such guidance, the Court holds that a genuine issue of material fact remains as to how the existing settlements and judgment amounts affect the losses, if any, that ERII will ultimately be required to cover.

[19]  The parties agree that NUFIC has already paid its $10 million limit in coverage entirely for reasonable legal fees spent in connection with the Cogan litigation.

dismissing <u>all</u> of Plaintiff's claims against it.

CONCLUSION

For the foregoing reasons, the Court grants Defendant's motion for summary

judgment in part. The Court holds that, as a matter of law, ERII's insurance policy does not cover

the monetary losses (including the corresponding pre-judgment interest ("PJI") and late charges, if

applicable) in connection with the following claims as set out in <u>Cogan</u> final judgment:

| | |
|---|---|
| <u>Count IV - Nelson</u> | <u>Amount</u> |
| Cogan borrowings-principal | 13,411,712.52 |
| PJI on same | 7,009,571.67 |
| Excess Compensation-principal | 4,207,303.00 |
| PJI on same | 3,225,785.49 |
| Dow Redemption | 3,000,000.00 |
| PJI on same | 1,538,630.14 |
| Dividends | 5,122,989.00 |
| PJI on same | 3,266,409.57 |
| | |
| <u>Count IV - Winters</u> | |
| Cogan borrowings-principal | 13,411,712.52 |
| PJI on same | 7,009,571.67 |
| Dow Redemption | 3,000,000.00 |
| PJI on same | 1,538,630.14 |
| | |
| <u>Count V - Nelson</u> | |
| Dividends | 4,309,823.00 |
| PJI on same | 2,738,205.35 |
| Dow Redemption | 3,000,000.00 |
| PJI on same | 1,538,630.14 |

(Lance Aff. Ex. E at 6-10.) In addition, the ERII insurance policy does not cover the post-judgment

interest corresponding to the claims listed above. Defendant's motion for summary judgment is

denied, however, with respect to the remaining issues.

-----

(Opp'n at 21-22.)

The parties shall promptly meet with Magistrate Judge Katz, to whom this case is now referred for general pretrial management purposes, to discuss settlement. The final pre-trial conference shall be held on December 7, 2007, at 10:30 a.m.

SO ORDERED.

Dated:      New York, New York
            September 5, 2007

                                        _____
                                        LAURA TAYLOR SWAIN
                                        United States District Judge